07-3550-cv
Encarnacion v. Astrue

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

--------

August Term, 2008

(Argued:   December 11, 2008; Last Submission:   February 24, 2009
                                   Decided: June 4, 2009)

Docket No. 07-3550-cv

------------------------------------------------------------X

ELISA ENCARNACION, on behalf of ARLENE GEORGE, ANA LORA, on
behalf of MICHELLE TAVARES, HORTENSIA LACAYO, MATTHEW LACAYO,
and ROSA VELOZ, on behalf of BEN-HAMIR COLLADO,

Plaintiffs-Appellants,

- v. -

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant-Appellee.

------------------------------------------------------------X

Before:   McLAUGHLIN, WESLEY, and HALL, Circuit Judges.

The U.S. District Court for the Southern District of New York (Swain, J.) granted summary judgment to the Commissioner of Social Security, upholding the Commissioner's implementation of the Social Security Act's provisions for determining children's eligibility for Supplemental Security Income Benefits.  The plaintiffs appealed.  Pursuant to Skidmore v. Swift & Co., 323 U.S. 134 (1944), we hold that the agency's interpretation of the Act is persuasive and therefore should be upheld.

AFFIRMED.

JEFFREY S. TRACHTMAN, Kramer Levin Naftalis & Frankel LLP (Jessica Glass, Kramer Levin Naftalis & Frankel LLP; James M. Baker, Christopher James Bowes, Center for Disability Advocacy Rights; Kenneth Rosenfeld, Matthew J. Chachere, Northern Manhattan Improvement Corporation Legal Services, <u>on the brief</u>), New York, New York, <u>for Plaintiffs-Appellants</u>.

SUSAN D. BAIRD, Assistant U.S. Attorney (Michael J. Garcia, U.S. Attorney for the Southern District of New York, David S. Jones, Assistant U.S. Attorney, <u>on the brief</u>), New York, New York, <u>for Defendant-Appellee</u>.

McLAUGHLIN, <u>Circuit Judge</u>:

The plaintiffs represent a putative class of children whose parents claim that the Commissioner of Social Security (the "Commissioner") has implemented a policy (the "Policy") that excludes some children from eligibility for Supplemental Security Income Benefits ("SSI Benefits") in a manner that violates the Social Security Act (the "Act") and the Commissioner's own regulations. Pursuant to those regulations, childhood disability is determined by evaluating applicants within six domains of functioning, such as the child's ability to acquire and use information. Children are eligible for benefits if they have at least two "marked" limitations on their functioning within these domains or at least one "extreme" limitation. Under the Policy, the combined effect of a child's multiple mental or physical impairments may be deemed a marked or extreme limitation if the

2

limitation occurs within a single domain. But the Policy prohibits the Social Security Administration (the "SSA") from considering the combined effects of limitations in different domains. Thus, the SSA will not adjust a less-than-marked limitation in one domain based on limitations in other domains.

The plaintiffs maintain that the Policy violates the Act's command that the SSA consider the combined effects of a child's impairments "throughout the disability determination process." 42 U.S.C. § 1382c(a)(3)(G). They also claim that the Policy violates a nearly identical provision in the Commissioner's regulations. The district court disagreed and granted summary judgment to the Commissioner. We AFFIRM.

**BACKGROUND**

This is the second time we have addressed the plaintiffs' claims. We provide an abbreviated version of the extensive background, including the relevant statutory and regulatory history, recounted in our prior decision, Encarnacion ex rel. George v. Barnhart, 331 F.3d 78, 80-86 (2d Cir. 2003) ("Encarnacion I").

The Act provides for SSI Benefits to disabled children as well as adults. See Pub. L. No. 92-603, § 301, 86 Stat. 1329, 1471, 1473 (1972). The Commissioner has authority to promulgate regulations to determine eligibility for SSI Benefits. See 42 U.S.C. § 405(a). In 1984, Congress added to the Act a provision

3

that applies to all disability determinations (whether for children or adults), which instructs:

> In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility [for SSI Benefits], the [Commissioner] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the [Commissioner] does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process.

Social Security Disability Benefits Reform Act of 1984, Pub. L. No. 98-460, § 4, 98 Stat. 1794, 1800 (codified at 42 U.S.C. § 1382c(a)(3)(G)). In 1985, the SSA adopted a regulation that repeats this statute nearly verbatim. See Disability Insurance and Supplemental Security Income; Determining Disability and Blindness; Multiple Impairments, 50 Fed. Reg. 8,726, 8,729 (Mar. 5, 1985)(codified at 20 C.F.R. § 416.923). These two provisions are central to the plaintiffs' claims in this case.

The Commissioner's regulations for determining a child's eligibility for SSI Benefits have undergone many amendments. One important change came as a result of the Supreme Court's decision in Sullivan v. Zebley, 493 U.S. 521 (1990). There, the Supreme Court held that the SSA regulations for determining whether a child is disabled, which permitted benefits to children only if their impairments matched or medically equaled specific impairments listed in an appendix to the SSA's regulations, were

4

an impermissible implementation of the Act.  See id. at 526, 541. The regulations did not permit a child claimant to show that "the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment."  Id. at 531.

In response to Sullivan, the SSA amended the regulations to require an "individualized functional assessment" ("IFA") for each child.  See Supplemental Security Income; Determining Disability for a Child Under Age 18, 56 Fed. Reg. 5,534 (Feb. 1, 1991) (codified at 20 C.F.R. § 416.924).  As a result of the new regulations, a child's impairments were evaluated within six domains of childhood activity or functioning.  See Encarnacion I, 331 F.3d at 83.  The amended regulations established a hierarchy of limitations (the effect of an impairment or combination of impairments): "extreme," "marked," "moderate," and "severe."  See id.  The regulations recommended that children be deemed disabled if their impairments caused a marked limitation in one domain and a moderate limitation in another domain, or if a child had three moderate limitations.  See id.

In 1996, the regime for children's SSI Benefits underwent more changes.  Congress amended the Act to define a "disabled" child as one who "has a medically determinable physical or mental impairment, which results in marked or severe functional limitations, and which can be expected to result in death or

5

which has lasted or can be expected to last for a continuous period of not less than 12 months." Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, § 211, 110 Stat. 2105, 2188-89 (codified at 42 U.S.C. § 1382c(a)(3)(C)(i)). Congress made clear that children should not qualify for benefits under the new definition unless they have at least two marked limitations, thus making eligibility more restrictive. See Encarnacion I, 331 F.3d at 83-84 (citing H.R. Rep. No. 104-725, at 328 (1996) (Conf. Rep.), reprinted in 1996 U.S.C.C.A.N. 2649, 2716). Congress also eliminated the IFA process. Pub. L. No. 104-193, § 211(b)(2), 110 Stat. at 2189.

The Commissioner was charged with promulgating "such regulations as may be necessary to implement" the amendment, id. § 215, 110 Stat. at 2196, and issued regulations pursuant to this statutory authority, see 20 C.F.R. § 416.924 et seq. The regulations establish a three-step process. First, the child must not be engaged in "substantial gainful activity." Id. § 416.924(a). Second, the child "must have a medically determinable impairment(s)" that is "severe" in that it causes "more than minimal functional limitations." Id. § 416.924(c). Third, the child's impairment or combination of impairments must medically or functionally equal an impairment listed in an appendix to the regulations. See id. § 416.924(d); 20 C.F.R. pt. 404, subpt. P, app. 1 (listing and describing impairments). The

6

plaintiffs' challenge concerns the manner of determining functional equivalence at the third step of this process.

For a child's impairment to functionally equal a listed impairment, the impairment must "result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). The domains that the regulations establish to determine whether impairments result in marked or extreme limitations are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. Id. § 416.926a(b)(1). The SSA must determine whether an impairment or combination of impairments causes a "marked" limitation on a child's functioning in at least two of these domains, or an "extreme" limitation in at least one domain. A "marked" limitation is "'more than moderate' but 'less than extreme'" and "interferes seriously with" a child's "ability to independently initiate, sustain, or complete activities." Id. § 416.926a(e)(2)(i). An "extreme" limitation is "'more than marked'" and "interferes very seriously with" a child's "ability to independently initiate, sustain, or complete activities." Id. § 416.926a(e)(3). The regulations recognize that an impairment or combination of impairments may have effects in more than one domain; thus, the SSA evaluates a child's impairments in any

7

domain in which they cause limitations. Id. § 416.926a(c).

The question that the plaintiffs urge us to answer in the affirmative is whether the Act and the regulations require the SSA to consider the combined effects of a child's impairments across domains. In other words, must the SSA consider, for example, whether the effects of impairments that cause a moderate limitation on a child's ability to acquire and use information (domain 1) and a moderate limitation on the child's ability to complete tasks (domain 2) result in a marked limitation? The plaintiffs advocate that the SSA must consider such adjustments to limitation levels to properly take a "comprehensive look" at the applicant. Under its Policy, the SSA does not engage in this sort of analysis.

The Commissioner points to two documents to support the existence of the Policy: an SSA training manual, see SSA, Office of Disability, Publ'n No. 64-075, Childhood Disability Training: Student Manual, Tab F at 15 (1997), and commentary in the notice of the agency's final rulemaking implementing Congress's 1996 amendments, see Supplemental Security Income; Determining Disability for a Child Under Age 18, 65 Fed. Reg. 54,747, 54,763 (Sept. 11, 2000) (codified at 20 C.F.R. pts. 404, 416). The manual provides that "[m]oderate limitations cannot be 'added up' to equal a 'marked' limitation." In the rulemaking notice, the Commissioner explained that permitting a finding of disability

8

based on less-than-marked limitations in multiple domains would improperly reinstate the IFA process, under which a child with three moderate limitations could be considered disabled. See id.

In September 2000, the plaintiffs sued the Commissioner in the U.S. District Court for the Southern District of New York (Swain, J.), claiming that they were denied benefits because of the Policy and that the Policy violated the Act because it prevented the agency from considering the combined effect of impairments throughout the disability-determination process. The district court upheld the Policy, and we affirmed, reading the SSA regulations to provide sufficient flexibility to "look comprehensively at the combined effects of [a claimant's] impairments." Encarnacion I, 331 F.3d at 90 (internal quotation marks omitted). We left open, however, the possibility of a later suit alleging that: (1) the Commissioner did not, in fact, permit the SSA to "adjust the level of a claimant's limitation within one or two domains to 'look comprehensively' at the claimant and account for the 'interactive and cumulative effects' of limitations in other domains," or (2) the domains insufficiently account for significant aspects of childhood functioning. See id. at 89 & n.7 (citations omitted).

The plaintiffs filed this case in September 2003, alleging that the Policy prevents the SSA from adding together less-than-marked limitations from separate domains and prohibits the SSA

9

from adjusting the level of limitation in one domain to reflect the impact of limitations in other domains. In support of their claims, the plaintiffs submitted an expert declaration from Kevin P. Dwyer, a school psychologist. Dwyer opined that the Policy resulted in an "irrational and unscientific" methodology for determining disability and denied benefits to children who were as, or more, disabled than those who had two marked limitations and qualified for benefits.

The district court granted summary judgment to the Commissioner. The court concluded that Encarnacion I did not require the Commissioner to engage in cross-domain combination of less-than-marked limitations and that the regulations, as informed by the Policy, adequately took into account the combined effect of a child's impairments. The court also found that Dwyer's general statements, unconnected to any actual cases, were insufficient to defeat summary judgment.

The plaintiffs now appeal.

**DISCUSSION**

We review de novo the district court's grant of summary judgment. Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007).

**I.    Effect of Encarnacion I**

The plaintiffs contend that Encarnacion I dictates a result in their favor. We disagree.

10

In Encarnacion I, the Court gave three reasons for rejecting the plaintiffs' challenge. First, the SSA considers impairments in each domain that they affect. 331 F.3d at 88. Second, the SSA evaluates the combined effects of impairments within each affected domain. Id. And third, notwithstanding the Policy, the regulations appeared to the Court to permit "the existence of sub-marked limitations in other domains [to] influence the level of impairment [the] SSA finds in any one given domain," although not in the sense that the SSA would add up less-than-marked limitations to equal a marked limitation. See id. at 88, 89. Thus, in the Court's view, the plaintiffs' challenge rested on the incorrect "assumption that after adding together limitations within domains, [the] SSA makes no further adjustments to the level of limitation in each domain." Id. at 88.

The Court also noted that "the flexibility to account for cumulative effects . . . is likely essential to a permissible implementation of the Act" because, under Sullivan v. Zebley, 493 U.S. 521 (1990), and the Act's language, an impairment cannot be "assigned zero weight in the ultimate decision whether or not to award benefits." Id. at 89, 90. However, based on the record before it, the Court was "satisfied that the agency's policy of considering the combined impact of an impairment within every affected domain but not adding across domains is not a plainly erroneous procedure . . . particularly since SSA regulations are

11

flexible enough to allow [Administrative Law Judges] to look comprehensively at the combined effects of [a claimant's] impairments." Id. at 90 (internal quotation marks omitted).

Judge Raggi wrote a separate concurrence to emphasize her view that the Court's opinion permitted, but did not require, the Commissioner to adjust the limitation level within one domain based on limitations in other domains. See id. at 92 (Raggi, J., concurring). Judge Raggi noted that "the SSA does not presently engage in across-domain analysis in determining childhood disability," but concluded that the Commissioner's method of evaluating the combined effects of impairments within each domain they affect was a reasonable implementation of the statute. See id. at 92-93. With regard to the majority's statement that the flexibility it described was "likely essential to a permissible implementation of the Act," Judge Raggi understood the majority to "refer[] both to the flexibility available in the present SSA practice . . . as well as to the flexibility afforded by the alternative across-domain adjustment process." Id. (internal quotation marks omitted).

We believe that Encarnacion I did not resolve the precise issue before us. Rather, the Court suggested what the plaintiffs assumed did not exist: the possibility of cross-domain adjustment as part of the agency's "comprehensive" look at each applicant. There is now, however, no dispute that the SSA, in practice, does

12

not engage in the sort of cross-domain adjustment that the Court in Encarnacion I thought the regulations permitted. Because it believed that the regulations allowed cross-domain adjustments, the Court in Encarnacion I did not decide whether the Commissioner could permissibly implement the Act without such analysis.

Like Judge Raggi, we do not read the majority's statement about sufficient flexibility to require the SSA to adjust the limitation level in one domain based on limitations in other domains. See id. at 92. Instead, we understand the Court to have meant that the Commissioner's interpretation could not be so inflexible as to assign zero weight to an impairment in the disability-determination process.[1] We know that the Court found sufficient flexibility for the three reasons noted above. We simply do not know, because the Court was not required to decide, whether the Court would have reached the same result absent the third of those three reasons — i.e., that the agency could adjust limitation levels within a particular domain based on a comprehensive look at the claimant. We therefore must decide that issue here.

---

[1] To the extent that the Court in Encarnacion I meant to suggest that the Act required the agency to make cross-domain adjustments, any such comments are dicta and do not free us of the obligation to decide the issue ourselves.

13

## II. Deference Due the Policy

The plaintiffs allege that the Policy conflicts with both the Act and the regulations. Before addressing the substance of their challenge, we must decide the level of deference due the Commissioner.

Whether a court defers to an agency's interpretation "depends in significant part upon the interpretive method used and the nature of the question at issue." Barnhart v. Walton, 535 U.S. 212, 222 (2002). When Congress has entrusted rulemaking authority under a statute to an administrative agency, we evaluate the agency's implementing regulations under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). See United States v. Mead Corp., 533 U.S. 218, 229-30 (2001). A similar deference applies when an agency interprets its own regulations. That interpretation, regardless of the formality of the procedures used to formulate it, is "controlling unless plainly erroneous or inconsistent with the regulation[s]." Auer v. Robbins, 519 U.S. 452, 461 (1997) (internal quotation marks omitted); see also Encarnacion I, 331 F.3d at 86 ("[A]n agency's interpretation of its own regulations is entitled to considerable deference, irrespective of the formality of the procedures used in formulating the interpretation."). Even if neither Chevron nor Auer applies, an agency interpretation is still entitled to "'respect according to its persuasiveness'"

14

under Skidmore v. Swift & Co., 323 U.S. 134 (1944). Estate of Landers v. Leavitt, 545 F.3d 98, 107 (2d Cir. 2008) (quoting Mead Corp., 533 U.S. at 221).

The plaintiffs argue that the Policy is not entitled to Chevron deference because it is not found in the regulations themselves, but is only expressed, if at all, in informal sources like the training manual.[2] Cf. id. at 106 ("[A]gency manuals, as a class, are generally ineligible for Chevron deference."). The plaintiffs also argue that the Policy is not entitled to Auer deference to the extent that it interprets 20 C.F.R. § 416.923 because that regulation merely parrots the language of 42 U.S.C. § 1382c(a)(3)(G). Cf. Gonzales v. Oregon, 546 U.S. 243, 257 (2006) ("An agency does not acquire special authority to interpret its own words when, instead of using its expertise and experience to formulate a regulation, it has elected merely to paraphrase the statutory language."). We need not resolve these issues because we conclude that, even applying the less deferential Skidmore standard, the Policy must be upheld. See, e.g., Fed. Express Corp. v. Holowecki, 128 S. Ct. 1147, 1156 (2008) (avoiding questions as to application of Chevron and Auer deference and upholding agency interpretation under Skidmore).

---

[2] The plaintiffs contend that the training manual and commentary to the 2000 rulemaking contain only "sparse and inconclusive references" to the Policy, and that the Commissioner has fully articulated the Policy only in this litigation.

15

**III. Application of _Skidmore_**

The weight we give an interpretation under _Skidmore_ depends "upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." _Skidmore_, 323 U.S. at 140. To gauge the persuasiveness of the Commissioner's interpretation, we begin with the text of the Act and regulation, both of which require the SSA to consider the combined impact of a claimant's impairments "throughout the disability determination process." 42 U.S.C. § 1382c(a)(3)(G); 20 C.F.R. § 416.923.

It is undisputed that the "disability determination process" is the sequential process that the Commissioner has established under his broad statutory authority. _See, e.g._, 42 U.S.C. § 405(a) (authorizing the Commissioner to promulgate regulations to determine eligibility for benefits); Pub. L. No. 104-193, § 215, 110 Stat. at 2196 (authorizing the Commissioner to implement the amended definition of childhood disability). The requirement that the combination of impairments be considered throughout the process must therefore be measured with reference to the "process" the Commissioner has created. We suggested in _Encarnacion I_ that "the Act appears to require that each of a claimant's impairments be given at least some effect during each step of the disability determination process." 331 F.3d at 90.

16

The Commissioner's interpretation satisfies this test because the SSA considers all impairments within each domain, the final step of the process as the Commissioner has defined it. The SSA "will consider a single impairment in every domain it affects, no matter the degree[,] [and] will assess the cumulative impact of all impairments relevant to a particular domain in assessing a child's cumulative functional limitation in that domain." Id. at 88. Thus, the Policy complies with the statutory language by mandating consideration of the combined impact of all impairments within each domain that the impairments affect. Contrary to the plaintiffs' argument, therefore, the Commissioner's interpretation does not assign "zero weight" to any impairment or combination of impairments.[3]

We also believe that the Commissioner's interpretation is consistent with the statutory changes Congress made in 1996. As we have noted, Congress intended the changes in the definition of childhood disability to ensure that only those children with at

[3] This case is unlike Sullivan v. Zebley, where the Supreme Court concluded that the childhood-disability regulations did not allow for consideration of all impairments throughout the process. See 493 U.S. at 535 n.16. The Court explained, however, that if children were given the same level of individualized consideration as adults, the regulations would comply with the statute. See id. For adults, the agency did not merely focus on the type of impairments, but evaluated the effect of all impairments on a claimant's functioning. See id. at 535-36 & 535 n.15. Within the domain system, the SSA provides an individualized assessment of the combined impact of a child's impairments; it does not merely look at the type of impairments in an objective fashion, but analyzes the effect of the impairments on the specific child claimant.

17

least two marked limitations within particular domains qualified for SSI Benefits. See id. at 83-84. Moreover, in its efforts to tighten eligibility, Congress rejected the IFA process, which had allowed the SSA greater flexibility to award benefits to children with fewer than two marked limitations. See id. at 84. We find persuasive the Commissioner's view that adjusting limitations in one domain based on limitations in another domain would result in benefits to children who did not satisfy the more restrictive standard Congress sought to impose, and would be too close to the IFA process Congress eliminated.

The Commissioner's interpretation — focusing on combined impairments within each domain — is easily understood and applied in a reasonably transparent manner. In contrast, we have difficulty understanding how the plaintiffs' interpretation of the statute would function in practice. Cf. Fed. Express Corp., 128 S. Ct. at 1157 (rejecting challenge to agency's interpretation under Skidmore because "[n]o clearer alternatives are within [the Court's] authority or expertise to adopt").

Because the plaintiffs do not challenge the Commissioner's use of the domains to determine functional equivalence, any interpretation they offer must account for the domains. While the plaintiffs' briefs and expert declaration are replete with condemnations of the Policy, they offer nothing in the way of an alternative system that would satisfy the statute and be

18

efficiently administered, using the domains. For example, the plaintiffs' expert opines that the Commissioner's Policy fails to consider, in the ultimate benefits determination, certain impairments that do not lead to marked limitations in any particular domain. He explains that "no competent clinician would fail to include [those impairments] as a highly relevant variable in the equation." How the SSA would consider impairments as a "relevant variable" outside the domains, in a system overseen by administrative law judges, not clinicians, is unexplained. The plaintiffs' briefs are similarly unenlightening. We are left with vague arguments that the Commissioner could have designed a better regulatory system to effectuate Congress's general marching orders. But "[w]here ambiguities in statutory analysis and application are presented, the agency may choose among reasonable alternatives." Id. at 1158.

Apart from the text, congressional purpose, and practical considerations, other factors point in favor of the Commissioner's interpretation. The SSA has substantial expertise and is charged with administering a complex statute. The agency's considerable efforts to refine the disability-determination process for children and align it with congressional purposes has led to "a body of experience and informed judgment to which courts and litigants may properly

19

resort for guidance." Id. at 1156 (internal quotation marks omitted). And the plaintiffs do not contend that the Commissioner has waffled in his interpretation of the statute or regulations; rather, his interpretation has been consistent since the agency implemented the 1996 amendments. See Alaska Dep't of Envtl. Conservation v. EPA, 540 U.S. 461, 488 (2004) (upholding agency's "longstanding, consistently maintained interpretation" under Skidmore).

Finally, the plaintiffs inordinately rely on the Dwyer declaration to argue that the Policy "violates accepted clinical standards for the evaluation of children and leads to irrational results." We lack the authority and are ill-equipped, in contrast to the Commissioner, to decide the best method to determine childhood disability. Nor does the plaintiffs' expert declaration (unaccompanied by any evidence as to actual children who are adversely affected by the Policy or a concrete alternative to the Commissioner's interpretation) overcome the Commissioner's reasonable, consistent application of the statute. We will not reject the agency's otherwise persuasive interpretation on the say-so of a single expert armed only with hypotheticals.

We therefore conclude that the Commissioner's interpretation of the Act and implementing regulations, embodied in the Policy, is entitled to deference under Skidmore.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the district court's judgment.